Filed 2/14/23 Van Voorhis v. Yee CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRUCE VAN VOORHIS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BETTY YEE et al.,<br><br>Defendants and Respondents. | A161350<br><br>(Contra Costa County<br>Super. Ct. No.<br>MSC19-00021) |

Appellant Bruce Van Voorhis is a former Superior Court judge with retained pension rights under the Judges' Retirement System Law (Gov. Code,[1] § 75500 et seq.). As such, he was a beneficiary of the celebrated *Mallano* litigation that concluded in 2018, the result of which was that judges, including retired judges, received significant five-figure payments for past years where raises required by the governing legislature had not been paid.

Van Voorhis thought he was entitled to more, and in January 2019, filed a lawsuit alleging nine causes of action, all styled for "declaratory relief including monetary recovery." The trial court granted summary adjudication

---

[1] Unless otherwise indicated, subsequent statutory references are to this code.

1

against Van Voorhis on some issues, and later summary judgment, holding that none of his causes of action had merit. We affirm.

**BACKGROUND**

**The *Mallano* Litigation and the Legislation**

In early 2014, then-Justice Robert Mallano filed a class action lawsuit in Los Angeles County on behalf of a class of current and retired judges. The lawsuit named three defendants, the State Controller, Judges' Retirement System (JRS), and Judges' Retirement System II (JRS II), and alleged that defendants had not raised judicial salaries as required by the governing legislation, section 68203.[2] As Van Voorhis would later put it is his complaint, he "was eligible for and was automatically included as a member of the class in this class action lawsuit."

Mallano did not name the Department of Human Resources (CalHR) as a defendant, or allege any wrongdoing on its part. To the contrary, Mallano adopted CalHR's figures as the presumptively correct calculation of the "average percentage salary increase" under section 68203. Instead, Mallano's quarrel was with the Controller, JRS, and JRS II, alleging that since 2008, they had not raised judicial salaries despite having actual knowledge of CalHR's calculations—and thus not raised judicial salaries as required. Mallano argued that under section 68203 as it then existed, the transmission of a pay letter from CalHR to the Controller was not required to implement

---

[2] Judges who entered service before November 9, 1994 are generally members of JRS. (§ 75100 et seq.) Judges who entered service on or after November 9, 1994 are generally members of the Judges' Retirement System II. (§ 75500 et seq.; see § 75502.)

2

CalHR's calculations, when the Controller had actual knowledge of CalHR's calculations.[3]

Mallano won, and the superior court ordered the defendants to implement CalHR's calculations of the "average percentage salary increase" for fiscal years 2008–2009 to 2015–2016. In an unpublished opinion the Court of Appeal affirmed. (*Mallano v. Chiang* (Apr. 5, 2017, Nos. B272124 & B276842 [nonpub. opn.]); 2017 WL 1247811 (*Mallano I.*) The appellate court emphasized the Controller's actual knowledge of CalHR's calculations. And, describing testimony that "the Controller's office 'is well aware' of CalHR's salary increase calculations . . . ," the Court held that when they had actual knowledge of CalHR's calculations, the Controller, JRS, and JRS II were required to implement those calculations, even if they had not received a pay letter from CalHR or obtained a separate appropriation to pay for the judicial salary increases. (*Id.* at *8.) Like Mallano and the trial court, the Court of Appeal accepted CalHR's calculations of the "average percentage salary increase" as presumptively correct. (*Id.* at *7.) A second unpublished opinion was filed in 2018: *Mallano v. Chang* (June 26, 2018, B285285 [nonpub. opn.]; 2018 WL 3121536 (*Mallano II*).

The *Mallano* litigation resulted in a judgment directing payment of arrearages and benefits for the years 2008–2016. (See *Mallano I*, *supra*, 2017 WL 1247811.)

---

[3] The Department of Human Resources was created in 2012 in a governmental reorganization. It absorbed the functions of a number of former agencies, one of which was the Department of Personnel Administration (DPA), one of whose duties CalHR assumed was generating pay letters.

As noted, the two *Mallano* opinions were not certified for publication.[4] Despite that, this court granted Van Voorhis's motion to take judicial notice of them. The reason for our ruling appears to have been that judicial notice was taken by the trial court. (See Evid. Code, § 459, subd. (a) ["The reviewing court shall take judicial notice of . . . each matter properly noticed by the trial court"].) While the trial court gave no reason for its ruling, simply noting the absence of opposition, in its written decision the trial court noted that it previously concluded that "all of [Van Voorhis's] claims for fiscal years before 2016-17" were barred by res judicata and collateral estoppel. As will be seen, the trial court order went on to discuss and quote from the first *Mallano* opinion, as it was deemed relevant to applying the doctrines of collateral estoppel and res judicata. This is proper and does not violate rule 8.1115. (See *Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1106.) This especially true if, as here, the unpublished opinion is not being cited as legal authority but merely to establish the legal and factual background to this action. (See *The Utility Reform Network v. Public Utilities*

---

[4] Rule 8.1115 of the California Rules of Court provides in part as follows:

"(a) Except as provided in (b), an opinion of a California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by a court or party in any other action.

"(b) An unpublished opinion may be cited or relied on:

"(1) When the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel; or

"(2) When the opinion is relevant to a criminal or disciplinary action because it states reasons for a decision affecting the same defendant or respondent in another such action . . . ."

*Com.* (2014) 223 Cal.App.4th 945, 951, fn. 3; *Pacific, Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10.)

Meanwhile, shortly following the judgment in favor of the *Mallano* class, in apparent response to it the Legislature enacted, and the Governor signed, Senate Bill No. 848, which amended section 68203 (Stats. 2016, ch. 35, §22). And by the time *Mallano* became final, in mid-2018, section 68203 had been amended, including with language that provides:

"(a) On July 1, 1980, and on July 1 of each year thereafter, the salary of each justice and judge named in Sections 68200 to 68202[5], inclusive, and 68203.1 shall be increased by the amount that is produced by multiplying the then current salary of each justice or judge by the average percentage salary increase for the current fiscal year for California state employees; provided, that in any fiscal year in which the Legislature places a dollar limitation on salary increases for state employees the same limitation shall apply to judges in the same manner applicable to state employees in comparable wage categories.

"(b)(1) For the purposes of this section, average percentage salary increases for California state employees shall be those increases as reported by the Department of Human Resources to the State Controller in a pay letter."

**The Proceedings Below**

On January 8, 2019, representing himself, Van Voorhis filed a complaint styled "For Declaratory Relief And Monetary Recovery." It named three defendants: Betty Yee, the State Controller, JRS, and the Board of Administration of the Public Employees Retirement System of California (CalPERS) (when referred to collectively, respondents). Van Voorhis alleged

---

[5] Section 68202 specifies the salary for judges of the Superior Court.

that he named CalPERS because it allegedly "administers JRS and has the duty to demand that the Controller draw warrants (make payments) from the Judges' Retirement Fund . . . for judicial retirement benefits lawfully owed to Plaintiff."

The complaint was, as noted, for "declaratory relief, including monetary recovery." And it went on to allege nine causes of action, also styled for declaratory relief, seeking the ordering of "increased judicial salaries" and "increased judicial retirees' benefit payments that correspond . . . to the increased judicial salaries." The first four causes of action alleged that the Controller had in the previous three years not complied with section 68203 in calculating judicial salaries and "retiree benefits," thereby warranting numerous forms of declaratory relief. And causes of action five through nine alleged that the Controller and JRS have an independent duty to calculate, verify, or correct CalHR's calculation of the "average percentage salary increase." Despite attacking CalHR's calculations of the "average salary increase," Van Voorhis did not name CalHR as a defendant.[6]

The case was assigned for all purposes to a most experienced superior court judge, the Honorable Edward Weil, in a complex department. Early in the litigation Judge Weil directed the parties to "file cross-motions . . . related only to the issue of to what extent *Mallano v. Chiang* . . . and related appellate cases . . . have claim-preclusive or issue-preclusive effect in this

---

[6] It is clear from the language of section 68203 that CalHR has an integral, indeed, pivotal, role in fixing judicial salaries and retirement benefits. Subdivision (b)(1) provides that it is CalHR that commences the annual process by communicating the "average percentage salary increase" in a pay letter to the Controller. Van Voorhis seemed to accept this relationship, insisting that he "must be enabled to verify the accuracy of . . . [CalHR's] pay letters."

6

case." In August 2019, both sides filed such motions, Van Voorhis for summary adjudication, and respondents for summary judgment or, in the alternative, summary adjudication.

On September 30, Judge Weil denied Van Voorhis's motion and granted in part respondents' motion on preclusion issues, holding that "all claims based on retirement payments for the years 2008–[20]09 through 2015–[20]16 [i.e., the fiscal years covered by the *Mallano* judgment] . . . are barred by both claim preclusion and issue preclusion." For fiscal years 2016–2017 and later, Judge Weil denied respondents' motion without prejudice to it being asserted later with additional supporting evidence, determining that the Legislature's amendment of section 68203 in response to *Mallano* meant there might be "new calculation practices that went into effect during the 2016–[20]17 fiscal year or later" that could not have been challenged in *Mallano*—and therefore not claim-precluded.

In April 2020, respondents moved for summary judgment. The motion was accompanied by four lengthy declarations of: Jennifer Watson, Dave Ide, Lisa Dean, and Manpreet Singh. Ide was a personnel program manager of CalHR, a position he held since 2013, having begun his employment at CalHR in 2001. From 2003 to 2008 his job responsibilities included the calculation of the average state employees pursuant to section 68203; and in 2007 his responsibilities shifted to verifying the accuracy of the calculations. And, he testified, from 2003 to 2020 the calculations were correctly made each year.

Watson, the assistant division chief at CalPERS, testified that it implemented the *Mallano* decision. Dean was the analysis bureau chief in the office of the Controller, and supervised the implementation of the

7

*Mallano* judgment on her behalf. And Singh, in the personnel management division of CalHR, testified in detail about the preparation of the pay letters.

On June 15, Van Voorhis filed his opposition to the motion, which included what he called his "Evidence in Opposition." That "evidence" lists 10 exhibits, four of which were listed as "declarations," including a 67-page supplemental declaration of Van Voorhis. The three other items identified as "declarations" are of: (1) "Van Voorhis," (2) "Konopasek," and (3) "Elections Department Declarations." The original Van Voorhis declaration is not in the record. The Konopasek "declaration" is a two-lines long letter, from the Assistant Registrar of Voters, not under penalty of perjury, addressed "to whom it may concern," about the term of Contra Costa County Superior Court Judge Fenstermacher. And the Elections Department "declarations" are two short statements by elections officers reporting on judge openings in Marin and Los Angeles Counties.

As indicated, Van Voorhis's "evidence" consists mostly of Van Voorhis's 67-page supplemental declaration, a "declaration" that was for the most part a mix of argument, opinion, and speculation, which is most inappropriate. As the leading practice treatise puts it: "[9:49.5] **Declarations limited to facts, not legal arguments:** It is *improper* to include legal arguments in a declaration. (E.g., 'the interests of justice require . . .' or 'the following matters constitute "good cause" . . . .') As noted by one court, this is 'a sloppy practice which should stop . . . . [I]t makes a mockery of the requirement that declarations be supported by statement made under penalty of perjury.' ([*In re*] *Marriage of Heggie* (2002) 99 C[al.]A[pp.]4th 28, 30 . . . , fn. 3) . . . ." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:49.5, p. 9(I)-30.)

8

But beyond that, Van Voorhis provided no evidence contradicting the testimony of any of respondents' four witnesses.

The motion was scheduled for hearing on September 3, prior to which Judge Weil had issued a tentative ruling granting the motion. Van Voorhis did not contest it, and Judge Weil entered his order granting the motion—a comprehensive order indeed, 10-pages long, carefully and thoughtfully analyzing Van Voorhis's complaint in detail. Specifically:

The order began with Judge Weil granting Van Voorhis's request for judicial notice, followed by his exposition of the law of res judicata. Judge Weil then turned to a discussion of "terminology," going on for several pages demonstrating his deep understanding of this rather arcane subject. After all that he turned to Van Voorhis's complaint, demonstrating his clear understanding of it as well, proceeding to analyze the complaint on a cause of cation-by-cause of action basis, addressing the first and second causes of action together, the third and fourth causes of action together, and the fifth through ninth causes of action together. Doing so, Judge Weil held as follows:

> **"The First and Second Causes of Action.**
>
> "**Defendants' Alleged Wrongful Conduct.**
>
> "*Defendants' Role in Implementing Salary Increases.*
>
> "Section 68203, as amended, now reads in pertinent part as follows:
>
> "(b)(1)  For the purposes of this section, average percentage salary increases for California State Employees shall be those increases as reported by the Department of Human Resources to the Controller in a pay letter.
>
> "Defendants argue, in the alternative, that there can be no genuine dispute between plaintiff and defendants concerning defendants' obligations under section 68203, because defendants have implemented the salary

9

increases reported in the pay letters issued by CalHR for the 2016–[20]17 fiscal year forward.

"The Court finds that this argument has merit.  Plaintiff has neither alleged that, nor offered any evidence supporting the proposition that, there is any discrepancy between the pay letters issued by CalHR and the salary increases implemented by defendants.  Nor is it likely that any such discrepancy could ever arise:  the pay letters explicitly state the precise dollar amount of the salary increases, leaving nothing for defendants to calculate or interpret.  The statute gives defendants no discretion and explicitly sets forth the narrow scope of their ministerial duty:  to implement what the pay letters state the salary increases 'shall be.'  [¶] . . . [¶]

"The Court grants summary adjudication of the First and Second Causes of Action.  [¶] . . . [¶]

"**The Third and Fourth Causes of Action.**

"<u>*Claim Preclusion.*</u>

"The Third and Fourth Causes of Action are based on an alleged calculation error that is distinct from that alleged in the First and Second Causes of Action.  Plaintiff here alleges as follows:

". . . [T]he formula erroneously calculated the average increase (which involves size of increase) instead of the average percentage increase (which involves rate of increase) for California state employees.  Plaintiff alleges that <u>*Defendants' calculation was the wrong ratio*</u> calculating the percentage increase in judicial compensation payable. (Emphasis added.)

"The Court finds that these causes of action are barred by claim preclusion, because defendants' uncontradicted evidence shows that CalHR has used the same methodology for calculating the average percentage increase since 2003.  Plaintiff was a class member in the *Mallano* class

10

action, and the class representative could have raised the 'wrong ratio' theory in that action, but chose not to do so.

"The Court grants summary adjudication of the Third and Fourth Causes of Action on this ground.

"**Defendants' Alleged Wrongful Conduct.**

"As a second, fully independent ground for granting summary adjudication of the Third and Fourth Causes of Action, the Court finds that the analysis . . . above applies with equal force to these causes of action. There can be no genuine dispute between plaintiff and defendants concerning defendants' obligations under section 68203, because defendants have implemented the salary increases reported in the pay letters issued by CalHR for the 2016–[20]17 year forward.

"**The Fifth Through Ninth Causes of Action.**

"The Fifth through the Ninth Causes of Action are what the Court will refer to as the 'duty' causes of action. While the First through the Fourth Causes of Action are based on the premise that defendants themselves are directly responsible for making calculation errors, the Fifth through the Ninth Causes of Action are based on the premise that defendants had various duties to independently assess the calculations made by CalHR, to respond to claims of errors in those calculations received from judicial officers, and to correct any errors made by CalHR."

Then, after quoting the allegations in the fifth and sixth causes of action, Judge Weil continued on:

"The Seventh, Eighth, and Ninth Causes of Action are all variations on this 'duty' theme.

"The Court grants summary adjudication of these duty causes of action under the same rationale set forth . . . above."

Then, after again quoting section 68203, Judge Weil held that: "None of the supposed duties that are the subject of the Fifth through the Ninth Causes of Action can fairly be read into this statutory language. The statute gives defendants no discretion: the pay letters state what the salary increases 'shall be,' and the defendants' only duty under the statute is to implement those salary increases."

Finally as to these causes of action, Judge Weil observed: "The Court notes the seeming chaos and duplicative effort that imposing plaintiff's alleged additional duties would create. The State Controller, the JRS, and the Board would all have to hire the same kind of accounting staff already employed by CalHR, and each of those entities would have to perform an independent 'audit' of CalHR's work. How would any discrepancies between CalHR's calculations and defendants' calculations be resolved? How would any discrepancies among the three defendants' calculations be resolved?

"The Court cannot find that the Legislature intended to create such a scenario when it amended section 68203 in 2016. Rather, the Legislature intended to rectify the comparative confusion that was present during the *Mallano* era. The parties' respective duties are now clear: CalHR calculates, and defendants implement."

In sum, for the first through fourth causes of action—which alleged deficiencies in the calculation of the "average percentage salary increase"— Judge Weil determined that these claims could not be established because there was no evidence that the Controller or JRS had failed to implement the pay letters they received from CalHR. And as to the fifth through ninth causes of action—which alleged that the Controller and JRS had an independent duty to verify and correct CalHR's calculation of the "average percentage salary increase"—he held that these claims failed because under

12

amended section 68203 "the pay letters state what the salary increases 'shall be,' and [the Controller's and JRS's] only duty under the statute is to implement those salary increases."

On September 16, Judge Weil entered his judgment, from which Van Voorhis filed a notice of appeal.

## DISCUSSION

### Summary Judgment and the Standard of Review

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a)(1) (Section 437c).) And summary judgment will be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Section 437c, subd. (c).)

A defendant "moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) And to prevail, a defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to it. (*Aguilar, supra,* 25 Cal.4th at p. 849; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.)

Our review is under well-settled principles: "On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]' (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that

13

negate plaintiff's claims. (*Romano v. Rockwell Internat., Inc.,* [(1996)] 14 Cal.4th [479,] 487.) As we put it in *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320: '[W]e exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was without merit.' (Accord, *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

"But other principles guide us as well, including that '[w]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them.' (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.) And we must ' "view the evidence in the light most favorable to plaintiff[] as the losing part[y]" and "liberally construe plaintiff['s] evidentiary submissions and strictly scrutinize defendant['s] own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff['s] favor." ' (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96–97.)" (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253–254.)

In addition to the above is the well-recognized admonition, set forth, for example, in *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 this way: "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140.) . . . '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore,

14

to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)"

**The Summary Judgment Was Correct**

**Introduction**

As we discuss below, our de novo review leads to the same conclusion as the trial court—that none of Van Voorhis's causes of action has merit and the summary judgment was proper. Before turning to a demonstration of why, we begin with some observations about Van Voorhis's opening brief, the only brief he has filed.

Van Voorhis has filed a 79-page, 17,666-word Appellant's Opening Brief. The brief begins with a six-page "Table of Contents" that lists 31 items, a few of which might liberally be called arguments. However, there is no "argument" section per se, which is hardly good appellate advocacy.[7] The leading appellate commentary has many paragraphs devoted to the subject of "arguments," which it addresses in the context of the "discussion" section of an appellant's opening brief. These include the following:

"[9:148] **Discussion:** The discussion portion of the brief sets forth the applicable law, applies the law to the facts of the case, and argues for the desired disposition.

"[9:149] **PRACTICE POINTER:** The discussion section is fundamental to persuading the court to rule in your client's favor . . . . Thus, your arguments should be thoughtfully developed with sound *reasons* for the

---

[7] At page 13, before beginning to discuss the first of the items, the brief has a single word, in normal type, saying "Arguments."

holding you desire. Support your arguments with applicable legal authority (cases and statutes) *as well as logic*.

"... [9:150] **Use of Headings:** [California Rules of Court, rule] 8.204(a)(1)(B) requires each 'point' in a brief to appear 'under a separate heading or subheading summarizing the point . . . .' Thus, each issue should be addressed *independently* under a *separate heading* in the discussion section (¶9:91). Failure to do so may result in a *waiver* of the argument. (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [forfeiture of argument made only in footnote and not clearly set out with heading]; *Provost v. Regents of Univ. of Calif.* (2011) 201 Cal.App.4th 1289, 1294 ['we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument']; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 ['there is no separate argument heading or analysis of the issues. That alone is grounds to deem the argument waived'].) [¶] . . . [¶]

"... [9:160] **Scope of discussion:** The discussion section of a brief should address *all issues* to be raised on the appeal, incorporating sound argument and supporting legal authorities.

"... [9.160.1] **Demonstrating 'prejudicial' or 'harmless' error:** For *appellants*, this includes tendering a proper *prejudice* argument, spelling out in the opening brief exactly *how the asserted error caused a miscarriage of justice* so as to amount to reversible error. (*WFG Nat'l Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894–895 [prejudice arguments forfeited for failure to include citations to record]; *Adams v. MHC Colony Park Limited Partnership* (2014) 224 Cal.App.4th 601, 614–615 [conclusory argument that appellant was 'clearly prejudiced' by alleged error insufficient to carry burden of affirmatively demonstrating prejudicial error]; *Century*

16

*Sur Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 [court will not 'act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial'].)" (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2021) ¶¶ 9:148–9:160.1 (Eisenberg).)

Many of the 31 items in the table of contents appear to be musings of one kind or another; others are apparent statements of fact, as Van Voorhis would have them; and some defy description, illustrated, for example, by Item 31, which is that "all of the duties alleged and remedies prayed for by appellant should be declared in this appeal."

Moreover, in many places in his brief—on at least 13 separate pages (24, 30, 43, 62, 64, 67, 69, 70, 72, 73, 74, 76, and 77)—Van Voorhis requests "findings" or "complete findings under Code of Civil Procedure section 909," which Van Voorhis attempts to support with his declaration, "business records and official records," "personal records," and argument. This is inappropriate, for at least two reasons.

First, by order of January 29, 2021, over a year before his brief was filed, we denied Van Voorhis's request for factual findings.

Second, any request for findings on appeal would be denied because Van Voorhis fails to demonstrate any "exceptional circumstance" that would allow such findings under section 909. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Again Eisenberg is apt: Code of Civil Procedure section 909 "is not intended to usurp the trial court's fact-finding authority," and "the circumstances under which appellate courts will receive new evidence are *very rare.* . . . [¶] . . . [T]he proffered new evidence must enable the appellate court to *affirm* the judgment, not lead to a reversal; and appellate courts will not use [Code of Civil Procedure section] 909 to resolve *conflicts in the*

17

*evidence* or to *substitute their own factual determinations for those of the trial court*." (Eisenberg, *supra*, ¶ 5:169.)

In light of all this, it is difficult to discern precisely what, if any, arguments Van Voorhis makes. But one thing his brief does assert is this: "Please decide if the Van Voorhis dismissal was erroneous." That we will do, but against the background that Van Voorhis must do more than ask nicely. He must demonstrate error, as held by many principles of appellate review, principles ignored by Van Voorhis. The most fundamental principle is that a judgment is presumed to be correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and any ambiguity in the record is resolved in favor of the appealed judgment or order. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) Moreover, Van Voorhis bears the burden of overcoming the presumption of correctness and must provide an adequate record demonstrating the alleged error (*Jameson v. Desta*, *supra*, 5 Cal.5th at pp. 608–609), failure of which requires that the issue be resolved against him. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296; *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [judgment affirmed where appellant failed to present adequate record].)

That he has not done. The summary judgment was correct.

**The First Through Fourth Causes of Action**

To briefly recap, the first four causes of action in Van Voorhis's complaint alleged that the "average percentage salary increase" called for by section 68203 had been miscalculated in various ways, and sought declaratory judgment about the meaning of the phrase. Judge Weil entered

18

summary judgment on these causes of action, as the undisputed evidence demonstrated that the Controller and JRS had done nothing wrong. Van Voorhis has demonstrated nothing to the contrary.

Section 68203 dictates that the salaries of active judges, to which the pensions of retired judges are linked, are to be increased by multiplying current judicial salaries by "the average percentage salary increase for the current fiscal year for California state employees." (§ 68203, subd. (a).) As amended in 2016, section 68203 defines "average percentage salary increases for California state employees" as "those increases as reported by the Department of Human Resources to the State Controller in a pay letter." (*Id.*, subd. (b)(1).) Thus, and as Judge Weil aptly observed, "section 68203 now explicitly requires CalHR to send [pay letters to] defendants," whose "only duty under the statute is to implement those salary increases."

In short, respondents presented undisputed evidence that CalHR, not the Controller or JRS, has historically calculated the "average percentage salary increase" under section 68203. Respondents' witnesses also described how CalHR has used the same method to calculate the "average percentage salary increase" since at least 2003. This included Ide, who testified among other things that "This method . . . has not changed since at least fiscal year 2003–2004." The calculation method for individual pay letters "is the same method that CalHR has previously used since at least 2003"; "for fiscal years 2016–2017, 2017–2018, 2018–2019, and 2019–2020, CalHR used the same methodology to calculate the 'average percentage salary increase' under section 68203 as in the prior fiscal years dating back to at least 2003."

The undisputed evidence also showed that for every year since the *Mallano* judgment was entered, and section 68203 amended, CalHR calculated the "average percentage salary increase" for state employees and

19

sent it in pay letters to the Controller and JRS. Other undisputed evidence, this from Watson and Dean demonstrated that every year the Controller and JRS implemented the pay letters they received from CalHR.[8] And were all this were not enough, the implementation was to the satisfaction of the Los Angeles Superior Court.

Van Voorhis asserts that CalHR's "calculation charts are erroneous and the math is erroneous under the formula and the database," and argued that Judge Weil should have issued an interpretation of the phrase "average percentage salary increase," despite that Van Voorhis did not sue CalHR. As Van Voorhis put it below, it was not required "that plaintiff must sue (CalHR) to compel CalHR to issue new and/or corrected pay letters." Or as he puts it here, "Appellant does not have to hunt, summon, or accuse . . . CalHR." In short, he requested the trial court to issue an advisory opinion. To no avail.

First, and fundamentally, Code of Civil Procedure section 1060, the Declaratory Relief Act, deals with "cases of actual controversy." And Code of Civil Procedure section 1061 provides as follows: "The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." Thus, in declaratory relief actions courts are to decide only actual controversies, and not issue advisory opinions. (*California Charter Schools Assn. v. Los Angeles Unified School District* (2015) 60 Cal.4th 1221, 1234.) The actual controversy requirement means that a court may not adjudicate a controversy only if it is a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as

---

[8] Except for minor technical adjustments to their systems or staffing.

distinguished from an opinion advising what the law would be on a hypothetical state of facts. (See generally, *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582.)

Beyond that, CalHR—whose interpretation of section 68203 is "entitled to consideration and respect" (*Mallano I, supra,* 2017 WL 1247811, \*7)— would be severely prejudiced by having the correctness of its long-standing interpretation and implementation of section 68203 adjudicated without it being present. (Code Civ. Proc., § 389, subd. (a); *Cook v. Superior Court* (2008) 161 Cal.App.4th 569, 578 [missing party needed because of "statutorily required role in the process"]; *Center for Biological Diversity, Inc. v. FPL Group, Inc.* (2008) 166 Cal.App.4th 1349, 1370–1372 [county necessary party when "complex and value laden" policy judgments were required].)

Van Voorhis argued below that if Justice Mallano could proceed against the Controller, JRS, and JRS II without the participation of CalHR, he too should have been able to obtain a declaration of the term "average percentage salary increase" without the presence of CalHR. But, as Judge Weil observed, Van Voorhis's claims are different than Mallano's: Mallano did not challenge CalHR's calculations, but treated them as presumptively correct; by contrast, Van Voorhis alleges that CalHR has been miscalculating the "average percentage salary increase" under section 68203.

**The Fifth Through Ninth Causes of Action**

Beginning with the fifth cause of action, Van Voorhis's complaint seeks a declaration that if CalHR fails to calculate the "average percentage salary increase" under section 68203, or if CalHR errs in its calculations, then section 68203 imposes an affirmative duty on JRS and the Controller to "do the calculation correctly and/or see that the calculation is done correctly." The fifth cause of action is illustrative, where Van Voorhis alleged that this

21

duty encompasses obligations to monitor, record, or use certain data, to investigate and correct mistakes in the calculation, disclose how the calculation is made, keep certain records, and/or not rely on CalHR's calculations. The complaint also broadly alleged that, even if CalHR were primarily responsible for calculating the "average percentage salary increase" under section 68203, injunctive and declaratory relief could still be sought against the Controller and JRS because they had an independent duty to calculate, verify, or correct CalHR's allegedly erroneous calculations.[9]

The argument has no merit.

To demonstrate a duty on the part of a public official or entity, Van Voorhis must show " 'a ministerial duty to perform . . . .' " (*Physicians Comm. For Responsible Med. v. L.A. Unified School Dist.* (2019) 43 Cal.App.5th 175, 184 (*Physicians Comm.*).) "A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority," without discretion. (*Id.* at pp. 184–185 [internal citations and quotations omitted].) And a statute is deemed to impose a mandatory duty on a public official only if the statute affirmatively imposes the duty and provides implementing guidelines. (*Cal. Assn. of Professional Scientists v. Dept. of Finance* (2011) 195 Cal.App.4th 1228, 1236; *Pich v. Lightbourne* (2013) 221 Cal.App.4th 480, 492.)

Nothing in the plain language of section 68203 "affirmatively impose[s] the duty" on the Controller or JRS to calculate the "average percentage salary increase" or to ensure the correctness of CalHR's calculations.

---

[9] In his brief here, Van Voorhis asserts that "Respondents have always had a non delegated, justifiable duty to audit . . . Respondents were supposed to be . . . double-checking . . ."; "Respondents have been rubber-stamping on whatever CalHR says is judicial compensation"; "Respondents should have been responsible for standards and safeguards."

(*Physicians Comm.*, *supra*, 43 Cal.App.5th at p. 184.) On its face, section 68203 does not require the Controller or JRS "to perform any duty whatsoever" with regard to the calculation of the "average percentage salary increase." (*Cal. Assn. of Professional Scientists v. Dept. of Finance*, *supra*, 195 Cal.App.4th at p. 1236.) JRS is not mentioned at all, and the Controller is mentioned only once, as the recipient of the pay letters. (See § 68203, subd. (b)(1).)

As indicated, it is difficult to discern what, if any, arguments Van Voorhis makes. Respondents' brief identifies four of what they perceive to be possible arguments, and address them. Van Voorhis has filed no reply brief taking issue with respondents' description, and thus apparently agrees with their identification. Our review leads to no different conclusion, and thus we briefly address the issues ourselves.

### The *Mallano* Judgment

At various places in his brief Van Voorhis appears to contend that the Controller, JRS or JRS II have not complied with the *Mallano* judgment. (See AOB 29, 74 ["*Mallano* indebtedness"] 76 [same] and 77 ["compounding and interest were not computed correctly regarding interest in *Mallano*"].) Such argument was not adequately pleaded or developed, and could be deemed waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived' "]; see *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342 (*Tsemetzin*) [unpleaded issues cannot preclude entry of summary judgment].)

But even if the argument were not waived, it would fail on the merits. The Los Angeles Superior Court expressly "retain[ed] jurisdiction to enforce

23

the terms of the [*Mallano*] judgment," which it closely supervised. Moreover, even if the trial court had jurisdiction to evaluate defendants' compliance with the *Mallano* judgment, Van Voorhis has identified no basis for enjoining respondents' performance of it. Finally, and as noted, the undisputed evidence was that both the Controller and JRS II implemented the *Mallano* judgment.

### Re-Litigation of *Mallano*

At some places in his brief Van Voorhis appears to argue that he, as a class member, should be allowed to re-litigate *Mallano*, because the class attorneys should have challenged CalHR's calculations directly, or obtained a different amount of damages, or otherwise pursued different legal theories and remedies. In other words, and while not clear, Van Voorhis appears to be attempting to collaterally attack a favorable class judgment. Again, Van Voorhis never pleaded such a collateral attack in the trial court, so this argument is waived. (*Tsemetzin, supra,* 57 Cal.App.4th at p. 1342.)[10]

Moreover, to the extent Van Voorhis is challenging the Controller's or JRS's implementation of CalHR's calculations before or during *Mallano,* such claims would be claim-precluded and issue-precluded. The nature of the Controller's and JRS's duties under the prior version of section 68203 was exhaustively litigated in *Mallano,* where the trial court prescribed the remedy that respondents implemented. Thus, under claim preclusion, the two cases involve the same cause of action (the Controller's and JRS's duties), the same parties (Van Voorhis, the Controller, and JRS), and a final judgment. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824; *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897; see also *Hi-*

---

[10] In fact, Van Voorhis relied on the *Mallano* judgment in his complaint, and alleged that respondents were precluded by it.

*Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 734 [same primary right from the enactment and enforcement of a statute].) Under issue preclusion, the issue of the Controller's and JRS's duties under the prior version of section 68203 was determined in *Mallano*.

**Delegation**

At one place Van Voorhis appears to argue that section 68203 is an unconstitutional delegation of legislative authority to the executive branch. Van Voorhis did not separately plead non-delegation as a cause of action, and never mentioned—let alone developed—any such theory in opposition to the motion for summary judgment. Again, this argument is waived. (*Cal. Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1593, fn. 7 ["When an argument is not asserted below in opposition to a motion for summary judgment, it is deemed waived and will not be considered for the first time on appeal to reverse and order granting summary judgment"].)

**Effects of the 2016 Amendments to Section 68203**

Finally, Van Voorhis appears to briefly argue that the 2016 amendments to section 68203 cannot be applied to him. Van Voorhis did not plead such a claim in his complaint, or allege how the 2016 amendments to section 68203 actually harmed him. Therefore, this theory could not be relied upon to defeat summary judgment. (*Tsemetzin, supra*, 57 Cal.App.4th at p. 1342.)

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

_____
Richman, Acting P. J.

We concur:


_____
Miller, J.


_____
Markman, J. *


*Van Voorhis v. Yee* (A161350)

     *Superior Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.